United States District Court
Southern District of Texas
**ENTERED**
August 01, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUH YU REN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-444 |
| | § | |
| THE UNIVERSITY OF HOUSTON | § | |
| AT VICTORIA, ET AL., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendants' Motion for Summary Judgment (Doc. 40). The court has considered the motion, the response, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion be **GRANTED**.

## I.  Case Background

Plaintiff filed this employment action against the University of Houston at Victoria ("UH Victoria") and the University of Houston System ("UH System") (collectively, "Defendants").[2]

### A.  **Factual Background**

"Plaintiff is a sixty-four (64) years old Chinese male"[3] employed as a professor at UH Victoria's School of Business

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 4, Ord. Dated Feb. 16, 2017.

[2] See Doc. 1, Pl.'s Orig. Compl.

[3] See id. p. 4.

Administration (the "SBA").[4]   Plaintiff works as an associate professor of quantitative management science.[5]   Plaintiff describes his teaching areas as statistics and business forecasting, but he has also regularly taught production management and quantitative decision making.[6]

For a variety of reasons, during his employment, Plaintiff has launched numerous "email wars" against administrators and colleagues at UH Victoria.[7]   According to multiple UH Victoria current and former administrators, Plaintiff caused a "level of disruption and divisiveness" that they had never seen caused by another individual.[8]   For example, in 2009, Dr. Jie Yang ("Yang") was hired to work at UH Victoria.[9]   Following Yang's hiring, Plaintiff waged one of his email campaigns against her as Plaintiff disagreed with various aspects of her employment.[10]   Plaintiff's

---

[4]   See Doc. 40, Defs.' Mot. for Summ. J. p. 4; Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 2.

[5]   See Doc. 40-1, Ex. 3 to Defs.' Mot. for Summ. J., Faculty Roster.

[6]   See Doc. 40-1, Ex. 4 to Defs.' Mot. for Summ. J., Pl.'s Dep. Tr. pp. 54:21-24, 58:3-11; Doc. 40-3, Ex. 37 to Defs.' Mot. for Summ. J., Decl. of Dr. Massoud Metghalchi.

[7]   See, e.g., Doc. 40-1, Ex. 5 to Defs.' Mot. for Summ. J., Aff. of Dr. Farhang Niroomand p. 19.

[8]   See id. p. 30; Doc. 40-1, Ex. 20 to Defs.' Mot. for Summ. J., Aff. of Dr. Jeffrey Cass p. 23; Doc. 40-3, Ex. 35 to Defs.' Mot. for Summ. J., Aff. of Dr. David Cockrum p. 17; Doc. 40-3, Ex. 37 to Defs.' Mot. for Summ. J., Decl. of Dr. Massoud Metghalchi p. 14.

[9]   See Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 3; Doc. 40-1, Ex. 5 to Defs.' Mot. for Summ. J., Aff. of Dr. Farhang Niroomand p. 20.

[10]   See Doc. 40-1, Ex. 20 to Defs.' Mot. for Summ. J., Aff. of Dr. Jeffrey Cass pp. 8-13.

email attacks continued until Yang filed a harassment complaint
against him.[11]   Plaintiff was issued a reprimand for his email
campaign against Yang.[12]   Plaintiff still complains about Yang's
employment and now argues that gender discrimination has propelled
Yang's career.[13]

Faculty at UH Victoria receive annual faculty evaluations
pursuant to a Faculty Development and Evaluation Plan (the
"FDEP").[14]   When there is money available, UH Victoria faculty
receive merit raises based on their annual evaluation scores.[15]
Plaintiff has consistently received low annual evaluation scores
and regularly received the lowest score in the SBA.[16]   Plaintiff's
receipt of low scores occurred before and during the relevant time
period.[17]

---

[11]    See Doc. 40-1, Ex. 20 to Defs.' Mot. for Summ. J., Aff. of Dr.
Jeffrey Cass pp. 8-10.

[12]    See id. p. 9.

[13]    See Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 3.

[14]    See Doc. 40-1, Ex. 5 to Defs.' Mot. for Summ. J., Aff. of Dr. Farhang
Niroomand pp. 3-7; 40-1, Ex. 13 to Defs.' Mot. for Summ. J., The FDEP; Doc. 40-2,
Ex. 31 to Defs.' Mot. for Summ. J., Decl. of Dr. Peggy Cloninger pp. 3-4.

[15]    See Doc. 40-1, Ex. 5 to Defs.' Mot. for Summ. J., Aff. of Dr. Farhang
Niroomand pp. 3-7; 40-1, Ex. 13 to Defs.' Mot. for Summ. J., The FDEP; Doc. 40-2,
Ex. 31 to Defs.' Mot. for Summ. J., Decl. of Dr. Peggy Cloninger pp. 3-4.

[16]    See Doc. 40-3, Ex. 37 to Defs.' Mot. for Summ. J., Decl. of Dr.
Massoud Metghalchi pp. 4-5; Doc. 40-2, Ex. 31 to Defs.' Mot. for Summ. J., Decl.
of Dr. Peggy Cloninger pp. 3-5; Doc. 40-1, Ex. 20 to Defs.' Mot. for Summ. J.,
Aff. of Dr. Jeffrey Cass pp. 7-9.

[17]    See Doc. 40-3, Ex. 37 to Defs.' Mot. for Summ. J., Decl. of Dr.
Massoud Metghalchi pp. 4-5; Doc. 40-2, Ex. 31 to Defs.' Mot. for Summ. J., Decl.
of Dr. Peggy Cloninger pp. 3-5; Doc. 40-1, Ex. 20 to Defs.' Mot. for Summ. J.,
Aff. of Dr. Jeffrey Cass pp. 7-9.

In 2012, Plaintiff's 2011 annual evaluation score was manually reduced.[18] However, the score was later recalculated in Plaintiff's favor, dropping the manual reduction.[19] Also in 2012, Plaintiff requested $865.20 to attend a conference and was approved for $750.00.[20]

On November 5, 2012, Plaintiff filed a charge of discrimination with the EEOC (the "2012 EEOC Charge") alleging discrimination on the basis of race, national origin, age, and retaliation.[21]

In 2013, Plaintiff requested $2,085 and was approved for $1,100 to attend a conference.[22] The same year, numerous other faculty received less money than requested in accordance with UH Victoria's guidelines for faculty travel.[23]

Plaintiff claims that in 2014, Defendants tried to ruin his career by suggesting that a recent article was self-plagiarized.[24]

---

[18]   See Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 3; Doc. 40-1, Ex. 18 to Defs.' Mot. for Summ. J., Apr. 26, 2012 Email.

[19]   See Doc. 40-1, Ex. 4 to Defs.' Mot. for Summ. J., Pl.'s Dep. Tr. p. 183.

[20]   See Doc. 40-2, Ex. 30 to Defs.' Mot. for Summ. J. Travel Fund Requests at UHV-5157-5159.

[21]   See Doc. 40-1, Ex. 6 to Defs.' Mot. for Summ. J., The 2012 EEOC Charge.

[22]   See Doc. 40-2, Ex. 30 to Defs.' Mot. for Summ. J. Travel Fund Requests at UHV-5166.

[23]   See id. at UHV-5164-5167; Doc. 40-2, Ex. 31 to Defs.' Mot. for Summ. J., Decl. of Dr. Peggy Cloninger pp. 5-6.

[24]   See Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 11.

4

Defendants' evidence showed that the department chair of Strategy and Decisions Sciences at UH Victoria, Peggy Cloninger ("Cloninger"), expressed a concern with a travel request made by Plaintiff because he was going to present a paper that may have been too similar to one of his previously presented papers.[25] Cloninger offered to meet with Plaintiff to discuss this potential ethical issue.[26]   In response, Plaintiff accused Cloninger of plagiarism on a paper she had co-authored, which automatically resulted in an investigation of Cloninger's paper.[27]

In late 2014 and early 2015, Plaintiff claims that Dr. Farhang Niroomand, the dean at the time, referred to Plaintiff as a "troublemaker" and showed a general dislike towards Plaintiff.[28] Throughout 2015, Plaintiff took issue with the classes that he was assigned to teach.[29]   In the summers of 2015 and 2016, Plaintiff's summer class was cancelled, and he was offered another course to teach.[30]   Plaintiff declined to teach the alternative course.[31]

On July 29, 2016, Plaintiff filed an amendment to the 2012

---

[25]   See Doc. 40-2, Ex. 31 to Defs.' Mot. for Summ. J., Decl. of Dr. Peggy Cloninger pp. 13-14.

[26]   See id.

[27]   See id. pp. 17-18.

[28]   See Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. pp. 4-5.

[29]   See id. p. 5.

[30]   See Doc. 44-3, Ex. 3 to Pl.'s Resp. to Defs.' Mot. for Summ. J., Emails Re Response to Questions.

[31]   See id.

EEOC Charge (the "2016 EEOC Charge").[32]  In the 2016 EEOC Charge, Plaintiff claimed that he was discriminated against on the basis of sex, national origin, age, and disability.[33]

## B.   <u>Procedural Background</u>

Plaintiff filed this lawsuit on February 10, 2017, alleging various causes of action against Defendants pursuant to Title VII of the Civil Rights Act of 1964[34] ("Title VII"), the Age Discrimination in Employment Act[35] ("ADEA"), Title I of the Americans with Disabilities Act[36] ("ADA"), and the Texas Commission on Human Rights Act[37] ("TCHRA").[38]  On December 26, 2017, the court entered a recommendation that all of Plaintiff's claims be dismissed except for his Title VII claims for national origin discrimination, gender discrimination, and retaliation.[39]  On January 10, 2018, the court's recommendation was adopted.[40]

On March 9, 2018, the court entered a recommendation that

---

[32]   <u>See</u> Doc. 40-1, Ex. 7 to Defs.' Mot. for Summ. J., The 2016 EEOC Charge.

[33]   <u>See</u> <u>id.</u>

[34]   42 U.S.C. §§ 2000e-2000e-17.

[35]   29 U.S.C. §§ 621-634.

[36]   42 U.S.C. §§ 12111-12117.  Plaintiff alleged no facts supporting a nonemployment claim under the ADA.

[37]   Tex. Lab. Code §§ 21.001-21.556.

[38]   <u>See</u> Doc. 1, Pl.'s Orig. Compl. pp. 16-21.

[39]   <u>See</u> Doc. 17, Mem. & Recom. Dated Dec. 26, 2017.

[40]   <u>See</u> Doc. 19, Ord. Dated Jan. 10, 2018.

Plaintiff's request for punitive damages be dismissed.[41]   On March 27, 2018, the court's recommendation was adopted.[42]   On January 18, 2019, Defendants filed their pending motion for summary judgment.[43] On February 15, 2019, Plaintiff filed a response to Defendants' motion for summary judgment.[44]   On February 27, 2019, Defendants filed their objections and reply to Plaintiff's response.[45]

## II.   Defendants' Objections to Plaintiff's Evidence

A party must support its factual positions on summary judgment by citing to particular evidence in the record.   Fed. R. Civ. P. 56(c)(1).   Federal Rule of Civil Procedure 56(c)(2) allows a movant to object to exhibits that "cannot be presented in a form that would be admissible in evidence" under the Federal Rules of Evidence.

Affidavits or declarations supporting summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."   Fed. R. Civ. P. 56(c)(4).   For a declaration to have the same force and effect of an affidavit, it must be signed and dated and contain a statement

---

[41]   See Doc. 25, Mem. & Recom. Dated Mar. 9, 2018.

[42]   See Doc. 11, Ord. Dated Mar. 27, 2018.

[43]   See Doc. 40, Defs.' Mot. for Summ. J.

[44]   See Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J.

[45]   See Doc. 47, Defs.' Objs. and Reply to Pl.'s Resp. to Mot. for Summ. J.

7

"in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746. Conclusory allegations, unsubstantiated assertions, improbable inferences, and speculation are not competent evidence. Roach v. Allstate Indem. Co., 476 F. App'x 778, 780 (5th Cir. 2012)(unpublished)(citing S.E.C. v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Defendants object to Plaintiff's attempt to now characterize himself as Taiwanese rather than Chinese.[46] However, in his complaint, Plaintiff argues that he was discriminated against "because of his national origin (i.e., Chinese)[.]"[47] The court cannot allow Plaintiff to conveniently switch between national origins at this stage to raise an issue of fact. Additionally, Plaintiff fails to provide summary judgment evidence that it was his Taiwanese national origin and not his Chinese national origin that was the genesis of the alleged discrimination. Accordingly, the court will consider Plaintiff's national origin to be Chinese.

Defendants object to Plaintiff's Exhibits 1 and 2 on the grounds that Plaintiff has not properly sworn to their contents under the penalty of perjury. The court questions the admissibility of these exhibits based on the standards articulated above. However, as the alleged errors are easily correctable by

---

[46]   See Doc. 44-1, Ex. 1 to Pl.'s Resp. to Defs.' Mot. for Summ. J., Pl.'s Aff. pp. 2-3; Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. pp. 19-20.

[47]   See Doc. 1. Pl.'s Orig. Compl. p. 16.

Plaintiff, the court will consider the portions of the evidence cited by Plaintiff.  See Fed. R. Civ. P. 56(c)(1).  However, the court will not consider the numerous conclusory allegations, unsubstantiated assertions, improbable inferences, and speculation contained therein.  See Roach, 476 F. App'x at 780.

Defendants' remaining objections to Exhibit 1 are **OVERRULED AS MOOT** as the court did not need to consider the objected to portions of the exhibit in ruling on the pending motion.

The court found it unnecessary to limit the actionable time period in ruling on Defendants' motion.  Thus, Defendants' related objections are **OVERRULED AS MOOT.**

Defendants object to Plaintiff's Exhibit 5 on the grounds that it is hearsay and violates the best evidence rule.  Defendants object to Plaintiff's Exhibit 6 on the grounds that Plaintiff has improperly redacted part of the email chain and the exhibit violates Federal Rule of Evidence 106.  Defendants objections are **GRANTED.**  Plaintiff is not prejudiced by the granting of these objections because the factual propositions for which each exhibit is cited have been established by other evidence.[48]

### III.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

---

[48]     See Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. pp. 12-13.

Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.</u>, 759 F.3d 498, 504 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  <u>Coastal Agricultural Supply, Inc.</u>, 759 F.3d at 504 (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>See id.</u> at 505 (quoting <u>Celotex Corp.</u>, 477 U.S. at 323).  If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute.  <u>See id.</u>  The court must accept all of the nonmovant's evidence as true and draw all justifiable inferences in her favor.  <u>Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.</u>, 759 F.3d 498, 505 (5th Cir. 2014)(quoting <u>Anderson</u>, 477 U.S. at 255).

## IV. Analysis

Plaintiff's remaining claims are Title VII claims for national origin discrimination, gender discrimination, and retaliation. Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).   In the absence of direct evidence, as is the case here, courts analyze discrimination and retaliation claims under the burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) [hereinafter McDonnell Douglas], and modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004).   Under this "modified McDonnell Douglas approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case. Rachid, 376 F.3d at 312.

After a plaintiff has established a prima-facie case, the burden shifts to the defendant to proffer legitimate, nondiscriminatory reasons for its actions.   Alkhawaldeh v. Dow Chem. Co., 851 F.3d 422, 426 (5th Cir. 2017).   If the defendant satisfies this burden, "the burden shifts back to the employee to demonstrate that the employer's proffered reason is a pretext for discrimination." Id.   At the summary judgment stage, the plaintiff must produce some evidence "demonstrating that discrimination lay

at the heart of the employer's decision." <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 720 (5th Cir. 2002). In certain circumstances, evidence that an employer's proffered reason is false may be enough to raise a fact issue on pretext if the jury could infer from the falsity of the explanation that discrimination was the real reason. <u>See</u> <u>Reeves v. Sanderson Plumbing Prods.</u>, Inc., 530 U.S. 133, 147–48 (2000); <u>Wal-Mart Stores, Inc. v. Canchola</u>, 121 S.W.3d 735, 740 (Tex. 2003)(stating that, even if the proffered reason is false, the plaintiff's evidence must indicate that discrimination was the real reason).

The court will first address Defendants' argument regarding the timeliness of Plaintiff's lawsuit before turning to the <u>McDonnell Douglas</u> analysis.

**A.    <u>Timeliness of Plaintiff's Lawsuit</u>**

Defendants argue that Plaintiff's lawsuit was untimely because he did not file his lawsuit within ninety days of receipt of his right-to-sue letter. <u>See</u> 42 U.S.C. § 2000e-5(f)(1). Plaintiff received his right-to-sue letter on November 14, 2016.[49] Plaintiff's lawsuit was filed on February 10, 2017, which is within ninety days of his receipt of the right-to-sue letter.[50]    Accordingly, Plaintiff's lawsuit was timely filed.

**B.    <u>National Origin and Gender Discrimination</u>**

---

[49]    <u>See</u> Doc. 44-4, Ex. 4 to Pl.'s Resp. to Defs.' Mot. for Summ. J., Right-To-Sue Letter and Envelope.

[50]    <u>See</u> Doc. 1, Pl.'s Orig. Compl.

A prima facie case of discrimination requires the plaintiff to show that he: (1) is a member of a protected class; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by someone who is not a member of the protected classes to which the plaintiff belongs or was treated less favorably than similarly situated employees of a different national origin or gender.  See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).  In the Fifth Circuit, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007).

Defendants argue that Plaintiff has not been subject to an adverse employment action.  In response, Plaintiff cites to numerous grievances, most of which do not rise to the level of an ultimate employment action.  Plaintiff appears to argue that he has suffered an adverse employment action in the retaliation context, which, as discussed below, has a different standard.[51]  The only claim that might qualify as an ultimate employment action is Plaintiff's vague claim of failure to promote.[52]

In order to show a prima facie case of discrimination on a failure to promote theory, Plaintiff must show that: "(1) he

---

[51]    See Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. pp. 10-20.

[52]    See id.

belongs to a protected class; (2) he applied for and was qualified for a position for which applicants were being sought; (3) he was rejected; and (4) a person outside of his protected class was hired for the position." Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 412 (5th Cir. 2007). Plaintiff has not provided any evidence that: (1) he applied for any position; (2) such application was rejected; and (3) that a person outside of his protected class was hired for that position. Instead, Plaintiff argues that due to Defendants' retaliation against him it was futile for him to apply for any promotion.[53]   Again, Plaintiff conflates his retaliation claims with his discrimination claims.

While the Fifth Circuit recognizes a futility doctrine in the failure to promote context, the doctrine only permits Plaintiff to maintain a failure to promote claim without applying for a promotion where he shows that he "was deterred by a known and consistently enforced policy of discrimination." See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 406 (5th Cir. 1999). Plaintiff has neither argued nor presented evidence that he was deterred from applying for a promotion by a "consistently enforced policy of discrimination" against male and/or Chinese professors. Accordingly, Plaintiff cannot maintain his gender and national origin discrimination claims on a failure to promote theory.

For these reasons, the court finds that Plaintiff has failed

---

[53]    See id. p. 14.

to present evidence that he suffered an adverse employment action sufficient to show a prima facie case of either Title VII national origin or gender discrimination.

## C.    **Retaliation**

When reviewing Title VII retaliation claims, a similar McDonnell Douglas framework used for discrimination claims is also applied.  The prima facie elements of a retaliation claim are: "(1) the employee engaged in an activity protected under Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action."  Fisher v. Lufkin Indus. Inc., 847 F.3d 752, 757 (5th Cir. 2017).

### 1.    **Protected Activity**

"Protected activities consist of (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing."  Rodriquez v. Wal-Mart Stores, Inc., 540 F. App'x 322, 328 (5th Cir. 2013)(unpublished)(internal quotation marks omitted)(citing Dias v. Goodman Mfg. Co., 214 S.W.3d 672, 676 (Tex. App.—Houston [14th dist.] 2007, pet. denied)).  "Complaining about unfair treatment without specifying why the treatment is unfair, however, is not a protected activity."  Tratree v. BP N. Am. Pipelines, Inc., 277 F. App'x 390, 395 (5th Cir. 2008)(unpublished)(citing Harris-Childs v.

15

Medco Health Solutions, 169 F. App'x 913 (5th Cir. 2006)). "[I]f the conduct complained of by the plaintiff had nothing to do with race, color, religion, sex, or national origin, a retaliation claim cannot be maintained under Title VII." Bartz v. Mitchell Ctr., A-05-CA-959-LY, 2008 WL 577388, at *2 (W.D. Tex. Jan. 23, 2008).

Plaintiff summarily claims that he "grieved unfair treatment based on a protected category by Dr. Niroomand and other deans at UHV[.]"[54]   However, Plaintiff has not identified a specific complaint that he made that was related to his national origin or gender, other than his EEOC charges.[55]  Rather, the record reflects that Plaintiff regularly complained that the general decision-making of Defendants was unfair.  Such complaints are not protected activity.  See Tratree, 277 F. App'x at 395.

Accordingly, the court finds that the only protected activity that Plaintiff engaged in was the filing of his two EEOC charges.

**2.  Adverse Employment Action and Causal Connection**

Under the less strenuous retaliation standard for an adverse employment action, Plaintiff "must show that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Davis v. Fort Bend County, 765 F.3d 480, 490 (5th Cir. 2014)(quoting

---

[54]   See id. pp. 10-11.

[55]   See id. 10-14.

16

<u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006)). "This materiality requirement separates 'significant from trivial harms.'" <u>Id.</u> (quoting <u>White</u>, 548 U.S. at 68). "Importantly, the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." <u>Id.</u> (internal quotation marks omitted)(quoting <u>White</u>, 548 U.S. at 69).

Plaintiff's EEOC charges must be a "but-for" cause of the alleged adverse action to establish his retaliation claim. <u>Univ. of Texas Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338, 362 (2013). The existence of a causal link may be determined by examining three factors:  (1) the employee's past disciplinary record; (2) whether the employer followed its usual disciplinary procedures when taking the adverse action; and (3) the temporal relationship between the protected activity and the adverse action. <u>Nowlin v. Resolution Trust Corp.</u>, 33 F.3d 498, 507-08 (5th Cir. 1994); <u>see Dehart v. Baker Hughes Oilfield Operations</u>, 214 F. App'x 437, 442 (5th Cir. 2007) (citing <u>Nowlin</u>, 33 F.3d at 508 (5th Cir. 1994)) (unpublished).

Close timing between an employee's protected activity and an adverse action against her may provide the "causal connection required to make out a prima facie case of retaliation." <u>Swanson v. Gen. Servs. Admin.</u>, 110 F.3d 1180, 1188 (5th Cir. 1997). However, temporal proximity alone may be a significant factor but not necessarily determinative of retaliation. <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1092 (5th Cir. 1995); <u>see also Roberson</u>

v. Alltel Info. Servs., 373 F.3d 647, 655 (5th Cir. 2004) (stating that the mere fact that an adverse action occurs after protected activity will not always be enough to establish a prima facie case); Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002) (same and adding that Title VII does not permit employees to ignore work rules or job requirements).

Plaintiff argues that the following qualify as retaliatory adverse employment actions: (1) Defendants did not promote him; (2) Defendants gave him lower evaluation scores so he would not get merit raises; (3) Defendants "tried to ruin his career by suggesting his articles were plagiarized[;]" (4) Defendants cancelled Plaintiff's classes; (5) Defendants reduced Plaintiff's performance reviews leaving him unable to apply for a promotion; (6) Defendants partially granted Plaintiff's requests for travel funds; and (7) Defendants assigned Plaintiff to work in a remote campus location.[56]

### i.   Failure to Promote

As discussed above, Plaintiff has not presented evidence that he applied for a promotion.  Plaintiff argues that two other professors filed EEOC charges against Defendants and were not promoted.[57]  Thus, Plaintiff argues he did not apply for a promotion because it would have been futile.

---

[56]   See id. pp. 10-14.

[57]   See id. p. 14.

Plaintiff has not cited to a case applying the Fifth Circuit's futility doctrine where the alleged policy was to discriminate against those that filed EEOC charges. Regardless, even if the doctrine is applied here, of the two employees who filed EEOC charges and were also not promoted, only one actually applied for a promotion. See Du v. Univ. of Houston at Victoria, 4:16-CV-3141, 2018 WL 1939503, at *6 (S.D. Tex. Apr. 5, 2018)(holding that UH Victoria professor's failure to apply for a promotion was fatal to his failure to promote claim); Chun-Sheng Yu v. Univ. of Houston at Victoria, 4:16-CV-03138, 2019 WL 652368, at *5 (S.D. Tex. Feb. 15, 2019)(holding that UH Victoria professor's failure to apply for a promotion during the actionable time period and failure to demonstrate a consistently enforced policy of discrimination were fatal to his failure to promote claim). These two very different cases are insufficient to show "a known and consistently enforced policy of discrimination" against employees who file EEOC charges. See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 406 (5th Cir. 1999). Accordingly, Plaintiff's failure to promote claim also fails in the retaliation context.

### ii.   Plagiarism Allegation and Travel Funds

Plaintiff also argues that two travel funding incidents constitute adverse employment actions. In 2012, prior to the filing of his first EEOC charge, Plaintiff was approved for $750.00

of funding when he requested $865.20 to attend a conference.[58]  Even if considered an adverse employment action, this travel fund request occurred prior to Plaintiff's EEOC charge.  Thus, it cannot provide the basis of a retaliation for Plaintiff's EEOC charge.

Plaintiff also claims that in 2013 he was only authorized $1,100 when he should have been approved for $1,500 to attend a conference.[59]  The evidence shows numerous other faculty received amounts less than those requested in 2013 and other years.[60]  The court finds that Plaintiff has failed to show that his partial funding was an adverse employment action.  Plaintiff has also failed to show any causal connection between the partial granting of his travel fund request and the 2012 EEOC charge.

Finally, regarding Plaintiff's argument that Defendants tried to ruin his career with plagiarism allegations, Plaintiff's conclusory allegation is inadequate to support a retaliation claim. First, Cloninger never directly accused Plaintiff of plagiarism; she noted the similarities between his to-be-presented paper and his previously presented paper.  Plaintiff has not provided the court with enough information relevant to this allegation for the court to analyze it.  At best, the evidence suggests that Plaintiff

---

[58]    See Doc. 40-2, Ex. 30 to Defs.' Mot. for Summ. J., Travel Fund Requests at UHV-5157-5159.

[59]    See Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 4.

[60]    See Doc. 40-2, Ex. 30 to Defs.' Mot. for Summ. J., Travel Fund Requests at UHV-5164-5167.

was, on one occasion in 2014, denied travel funding as a result of a self-plagiarism concern.[61]   Plaintiff has failed to show a causal link between this alleged incident and the filing of Plaintiff's EEOC charge.   Thus, even if Plaintiff's allegation is taken as true, it is insufficient to support his retaliation claim.

### iii. Work Assignments

Plaintiff argues that various class assignments and the cancellation of his courses in the summers of 2015 and 2016 constitute retaliatory employment actions.   Defendants proffered evidence that they cancelled two classes due to budgetary reasons and offered Plaintiff another class to teach so there would be no loss of pay.[62]   Plaintiff refused to teach the offered class.[63]   Even in the retaliation context, "[u]ndesirable work assignments are not adverse employment actions."   See Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997)(citing Harrington v. Harris, 108 F.3d 598, 603 (5th Cir. 1997)).   Further, Plaintiff has failed to causally connect any work assignment to either EEOC charge.

Accordingly, the court finds that the cancellation of these

---

[61]   See Doc. 44-1, Ex. 1 to Pl.'s Resp. to Defs.' Mot. for Summ. J., Aff. of Pl. p. 3; Doc. 44-2, Ex. 2 to Pl.'s Resp. to Defs.' Mot. for Summ. J., Pl.'s Am. EEOC Charge p. 2.

[62]   See Doc. 44-3, Ex. 3 to Pl.'s Resp. to Defs.' Mot. for Summ. J., Emails Re Response to Questions; Doc. 40, Defs.' Mot. for Summ. J. p. 20; Doc. 40-1, Ex. 5 to Defs.' Mot. for Summ. J., Dr. Farhang Niroomand Aff. pp. 28-29.

[63]   See Doc. 44-3, Ex. 3 to Pl.'s Resp. to Defs.' Mot. for Summ. J., Emails Re Response to Questions.

classes was not materially adverse.  Further, Plaintiff has failed to causally connect the cancellation of either class to his EEOC charges or rebut Defendants' proffered budgetary reasons for the cancellations.[64]

### iv.  Performance Review Deductions

Plaintiff argues that a deduction to his 2011 performance review, which allegedly left him unable to apply for a promotion, constitutes an adverse employment action.  The deduction cannot constitute a retaliatory employment action because it occurred prior to Plaintiff's EEOC charge.[65]  Further, the negative deduction was later recalculated in Plaintiff's favor.[66]

To the extent that Plaintiff is arguing that his performance review was reduced in 2014, the evidence establishes that the purported reduction was actually a clerical error and Plaintiff's score was not actually reduced.[67]  Further, had Plaintiff's score actually been reduced, he did not show a causal connection between the reduction and the 2012 EEOC Charge.

### v.  Lower Evaluation Scores and Merit Raises

---

[64]    See Doc. 40, Defs.' Mot. for Summ. J. p. 20; Doc. 40-1, Ex. 5 to Defs.' Mot. for Summ. J., Dr. Farhang Niroomand Aff. pp. 28-29.

[65]    See Doc. 40-1, Ex. 18 to Defs.' Mot. for Summ. J, Apr. 26, 2012 Email.

[66]    See Doc. 40-1, Ex. 4 to Defs.' Mot. for Summ. J., Pl.'s Dep. Tr. p. 183.

[67]    See Doc. 44-8, Ex. 8 to Pl.'s Resp. to Defs.' Mot. for Summ. J., Grievance Mem. p. 11.

Plaintiff also argues that Defendants gave him generally lower evaluation scores in order to give him lower merit pay increases. Specifically, Plaintiff claims his evaluations were around 4.0 prior to the 2012 EEOC Charge and between 2.5 and 2.0 following his EEOC charge.[68]

From 2010 to 2016, Plaintiff's annual faculty evaluation scores were as follows: (1) 3.93 in 2010; (2) 4.22 in 2011; (3) 3.35 in 2012; 3.15 in 2013; (4) 2.25 in 2014; (5) 2.45 in 2015; and (6) 2.55 in 2016.[69] Over this period, Plaintiff had the lowest average annual faculty evaluations of any other faculty.[70] Neither party established Plaintiff's performance reviews for other years.

Plaintiff received merit raises as follows: (1) 2.51% in 2008; (2) 2.594% in 2009; (3) 3.27% in 2010; (4) 2.19% in 2011; (5) 2.50% raise in 2013; (6) in 2014, there was partial merit money available and Plaintiff received a 1.00% raise; (7) 0.00% in 2016; (8) 3.00% in 2019.[71] There was no merit raise money available in 2012 or 2017.[72] Thus, no faculty received merit raises in those years.[73]

---

[68]    See Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 13.

[69]    See Doc. 40-1, Ex. 20 to Defs.' Mot. for Summ. J., Aff. of Dr. Jeffrey Cass pp. 8-9.

[70]    See id.

[71]    See Doc. 40-2, Ex. 29 to Defs.' Mot. for Summ. J., Merit Money Tables.

[72]    See Doc. 40-1, Ex. 5 to Defs.' Mot. for Summ. J. Aff. of Dr. Farhang Niroomand pp. 3-4.

[73]    See id.

Defendants also claim that there was no merit raise money available in 2018, but neither party has established that fact with evidence. Plaintiff also claims he was not given a merit raise in 2015, but neither party has presented evidence on this point.[74]

Although not as low as Plaintiff suggests, Plaintiff's performance reviews were generally lower following the 2012 EEOC Charge.  Negative performance reviews generally require a related financial harm in order to be materially adverse.  See Thibodeaux-Woody v. Houston Cmty. Coll., 593 F. App'x 280, 286 (5th Cir. 2014)(unpublished)(citing Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008)).  Plaintiff's merit raises were also generally lower following the 2012 EEOC Charge.  However, in the year following his 2012 EEOC charge, Plaintiff received a 2.50% merit raise which was on par with his pre-2012 EEOC Charge merit raises.  Additionally, for many of these years, including the year following the 2016 EEOC Charge, none of the faculty received merit raises.  The court finds that Plaintiff has failed to show that he received lower performance reviews with attached financial harms sufficient to constitute a materially adverse employment action.  However, out of an abundance of caution, the court proceeds to additional steps of analysis.

Assuming that Plaintiff was able to show his performance

---

[74]     Plaintiff cites to an exhibit that does not appear to be relevant to merit raises and Defendants did not include the 2015 merit raise table in their exhibit of merit raises.

reviews and allegedly resulting merit raises were materially adverse employment actions, he argues that their temporal proximity to his protected activities establishes a causal link.[75]    To establish a causal link between the protected activity and the materially adverse action by mere temporal proximity, the proximity must be "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001).    Plaintiff's EEOC charges were filed in November of 2012 and July of 2016.[76]    Thus, the nearest merit raises to Plaintiff's protected activity would likely occur in 2013 and 2017.[77]    Plaintiff's 2013 raise was on par with previous raises and no faculty received merit raises in 2017.    Assuming Plaintiff's 2014, 2015, 2016, and 2018 merit raises, or lack thereof, were lower as a result of his performance reviews, they did not occur near enough to Plaintiff's EEOC charges to establish a causal link relying on mere temporal proximity. See id. (holding that a twenty month period between the protected activity and adverse action was insufficient and citing cases finding that three and four month periods were insufficient).    Plaintiff was required to establish a causal link and the temporal proximity of the allegedly materially

---

[75]    See Doc. 44, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 13.

[76]    See Doc. 40-1, Exs. 6 & 7 to Defs.' Mot. for Summ. J., Pl.'s EEOC Charges.

[77]    Plaintiff has not provided summary judgment evidence on when the 2016 merit raises were decided.    Therefore, it is unclear if the 2016 EEOC Charge was filed before or after Plaintiff was not given a 2016 merit raise.    It was Plaintiff's burden to establish that the 2016 EEOC Charge was filed before the 2016 merit raises were issued if he intended to argue that the charge influenced the merit raise.

adverse actions to the EEOC charges is by itself insufficient. Accordingly, the court finds that for this additional reason Plaintiff has failed to establish a prima facie case of retaliation.

Finally, Defendants proffer the legitimate, nondiscriminatory reasons that Plaintiff's performance review scores were conducted consistent with the FDEP, and that merit raises were based on the resulting scores.[78] Plaintiff has not shown that his performance reviews were inconsistent with the FDEP or that his raises were inconsistent with his scores.

Plaintiff has failed to show a prima facie case of retaliation. Additionally, had Plaintiff shown a prima facie case, he would have lost at the final stage of the <u>McDonnell Douglas</u> analysis because he did not sufficiently raise a fact issue concerning any of Defendants proffered legitimate, nondiscriminatory reasons. As the court is recommending that Defendants' motion be granted on the stated grounds, it does not address Defendants' alternative arguments.[79]

### IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants'

---

[78]   <u>See</u> Doc. 40, Defs.' Mot. for Summ. J. p. 18; Doc. 40-1, Ex. 5 to Defs.' Mot. for Summ. J., Aff. of Dr. Farhang Niroomand pp. 3-7; 40-1, Ex. 13 to Defs.' Mot. for Summ. J., The FDEP; Doc. 40-2, Ex. 31 to Defs.' Mot. for Summ. J., Decl. of Dr. Peggy Cloninger pp. 3-4.

[79]   The court notes that the other grounds raised be Defendants are not jurisdictional. <u>See e.g.,</u> <u>Davis v. Fort Bend County</u>, 893 F.3d 300, 306 (5th Cir. 2018).

Motion for Summary Judgment be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 1st day of August, 2019.

Nancy K. Johnson
United States Magistrate Judge